## A04A2269. DILLARD v. THE STATE.
(612 SE2d 804)

ADAMS, Judge.

Angela Tiffany Dillard appeals her convictions and sentences on five counts of armed robbery, two counts of financial transaction card theft, two counts of financial transaction card fraud, and five counts of possession of a firearm during the commission of a felony.

Construed in favor of the verdict the evidence shows that two masked bandits engaged in three separate incidents of armed robbery in four days in Athens-Clarke County. On February 6, 2001, they robbed a graduate student at gunpoint. On February 8, they robbed

[21] *Williams Tile & Marble Co. v. Ra-Lin & Assoc.*, 206 Ga. App. 750, 752 (5) (426 SE2d 598) (1992).
[22] Id.

two students at gunpoint at an apartment complex. And shortly after midnight on February 9, they robbed two more students at gunpoint.

In the first incident, the robbers took the victim's credit card and bank check card at approximately 10:30 p.m. The victim immediately cancelled both cards and called the police. Bank business records show that he cancelled his credit card at 10:54 p.m. From approximately 11:00 p.m. to 11:30 p.m. the same night, Dillard, by her own admission at trial, went to Wal-Mart and attempted to purchase several items with the victim's credit card, although the purchase was denied because the credit card had been cancelled. Dillard and her accomplice Laurens Jackson were captured on Wal-Mart's video surveillance system driving into the parking lot in Dillard's car, walking through the parking lot, shopping, attempting to check out, and departing the parking lot. Dillard and Jackson then went to a convenience store about one mile away and attempted to use one of the cards there at 11:31 p.m. Again, they were photographed by store surveillance cameras.

In the second incident, the robbers took the victims' wallets, including credit and debit cards. On February 9, Dillard attempted to use one victim's debit card at an automated teller machine located at a bank. By her own admission at trial, Dillard is shown in pictures captured by the bank surveillance system using the victim's card with her car in the background. A search, pursuant to a warrant, of Dillard's car revealed a loaded .380 semiautomatic handgun under the driver's seat, a gray ski mask in the trunk with the eyes cut out, and a dark jacket in the trunk. Police also recovered a 9mm semiautomatic pistol from Jackson's mother.

Dillard's half-sister told the police that Dillard admitted to committing three armed robberies with Jackson and that she described the weapons that were eventually discovered.

1. After someone identified Dillard as one of the people in the photographs, two investigators went to Dillard's high school and met with the principal; Dillard was an eighteen-year-old senior at the time. Dillard was summoned to the principal's office, and Detective Calhoun showed her the ATM photographs. Dillard admitted that she was the person in the photographs and that her car was in the background. No *Miranda* warning had been issued at that time. She then agreed to accompany the detectives to the police department for further questioning. On appeal, Dillard contends that while she was in the principal's office she was restrained to a degree associated with formal arrest and that therefore her statement is inadmissible.

> *Miranda* warnings are required when a person has been taken into custody or otherwise deprived of his freedom of

action in some significant way. In deciding whether a defendant was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. We will disturb the trial court's determination on this issue only if it is clearly erroneous.

(Citations and punctuation omitted.) *Meadows v. State*, 264 Ga. App. 160, 167 (6) (590 SE2d 173) (2003).

[T]he determination of whether one is in custody depends upon the objective circumstances attending the particular interrogation at issue, and not upon the subjective views of either the person being interrogated or the interrogating officer. . . . [T]he relevant inquiry . . . is how a reasonable person in the suspect's position would perceive his or her situation. In determining whether *Miranda* warnings were required in a given situation, it is not relevant that investigators (1) might have focused their suspicions upon the person being questioned, or (2) have already decided that they will take the person into custody and charge them with an offense, so long as that individual is not in custody.

(Footnotes omitted.) *Hardin v. State*, 269 Ga. 1, 3 (2) (494 SE2d 647) (1998).

At the *Jackson-Denno* hearing, Calhoun testified that an employee of the school had notified the police that Dillard appeared to be one of the persons in a photograph from one of the incidents that the police had placed in the newspaper. He and another officer went to the high school, not in uniform but wearing badges and sidearms. They contacted the principal who identified Dillard from the photograph. The principal then summoned Dillard to the office, and a fifteen-minute meeting ensued between Dillard, the two officers, and the principal. Dillard appeared to be reasonably intelligent and appeared to understand the officers. The officers showed her the photographs and asked her if she knew who was pictured, and Dillard stated that she was one of the people shown. The officers' manner was conversational and Dillard did not appear frightened. Dillard was not in handcuffs, she had not been told that she was not free to go or under arrest, and she was never threatened or promised anything. She never asked to terminate the meeting or objected to the questioning. Thereafter, Dillard agreed to accompany the officers to the police department for further questioning. Some evidence therefore existed on which the trial court could have concluded that Dillard's freedom

was not restrained to the degree associated with a formal arrest. The trial court's decision to admit the statement was not clearly erroneous. See *Meadows*, 264 Ga. App. at 167.

*State v. Lucas*, 265 Ga. App. 242 (593 SE2d 707) (2004), is distinguishable for at least two reasons: this Court was asked to review the trial court's decision finding that the defendant was in custody, and an officer testified that the defendant was not free to leave at the time of the questioning. Id. at 243 (2). *State v. Wilson*, 257 Ga. App. 120 (570 SE2d 409) (2002), is distinguishable for at least three reasons: this Court was asked to review the trial court's decision finding that the defendant was in custody, the defendant was held and questioned for three hours, and the trial court doubted the credibility of the testifying officers. Id. at 127 (1).

2. Dillard contends on appeal that the trial court improperly admitted a prom photograph of Dillard that showed Dillard dressed in a man's tuxedo, but Dillard failed to object at trial to introduction of the evidence for that reason, and therefore there is nothing to review on appeal. "Where an entirely different objection or basis for appeal is argued in the brief which was not presented at trial we will not consider that basis as we are limited to those grounds presented to and ruled upon by the trial court." (Citation and punctuation omitted.) *Morrison v. State*, 256 Ga. App. 23, 25 (2) (567 SE2d 360) (2002).

3. Dillard contends that the trial court improperly admitted hearsay evidence from a police officer that a nontestifying declarant, Selma Woods, identified Dillard as being in one of the photographs. But any possible error is harmless because the information was cumulative of other proper evidence. *Watson v. State*, 278 Ga. 763, 768 (2) (604 SE2d 804) (2004). Dillard testified at trial that she was the person in the photographs, as did other witnesses.

4. Dillard contends the trial court improperly admitted double hearsay from witness Renita Bush about what she heard Demetrius Payne say about what Dillard had said.

Payne testified before Bush. Payne was 20 years old at the time; he and Bush lived together; and Dillard and Jackson would sometimes visit their home. He testified that on more than one visit, he heard Dillard and Jackson discuss robberies. On one occasion they discussed robbing someone, then left in Dillard's car, and returned later saying "we got like two or three dollars." Jackson had a gun. And Dillard acted like "she was all for it." On another occasion, Dillard had a gun. At a separate time, the two again discussed robberies and Jackson had his gun out. After 45 minutes they left, and when they returned they were again talking about robberies. At some point while they were out Payne received a telephone call. Payne testified, "I can't recall exactly which one of them it was that called but they

were like — whoever it was on the phone was like we got money. We got credit cards and all this and that and I just hung up on them." On cross-examination, defense counsel attacked Payne's credibility and even claimed that Payne was a suspect.

Subsequently, the State called Bush to the stand and asked her about the time that Payne received the telephone call. When Dillard objected the prosecutor explained that he wanted Bush to testify to Payne's description of the telephone conversation as a prior consistent statement. The judge noted that Dillard had attacked Payne's credibility, and he allowed the questioning to proceed. Bush testified that after the conversation, Payne told her that Dillard was speaking about having just robbed somebody and that they got some credit cards.

We find no error. The statement was admissible as a prior consistent statement because Payne's credibility had been placed at issue by way of an attack on his motive, he was present at trial, and he was available for cross-examination. See *Woodard v. State*, 269 Ga. 317, 319-320 (2) (496 SE2d 896) (1998). Dillard claims that Bush's testimony was neither "consistent [n]or inconsistent with [Payne's] statement" and that, therefore, the rule in *Woodard* does not apply. But we find the statement to be sufficiently consistent in that he testified that either Dillard or Jackson was on the phone admitting that the two had been engaged in a robbery. See *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985) (first adopting the rule regarding prior consistent testimony in a situation where one statement was consistent with the "clear implication" of the other).

5. Dillard also claims the court erred by admitting Payne's statement regarding the conversations between Dillard and Jackson because the statements by Jackson constitute inadmissible statements by a nontestifying co-defendant that implicate Dillard. See *Hardy v. State*, 223 Ga. App. 597, 598 (1) (478 SE2d 423) (1996).

OCGA § 24-3-5 provides, "After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." Under that Code section,

the State must make a prima facie showing of the existence of the conspiracy, without regard to the declarations of the co-conspirator[s], in order to admit [their] out-of-court declarations. The trial judge may admit testimony by co-conspirators before the conspiracy has been proved, provided its existence is ultimately shown at trial. Conduct which discloses a common design, even without proof of an express agreement between the parties, may establish a conspiracy.

(Citations and punctuation omitted.) *Livingston v. State*, 271 Ga. 714, 719 (3) (524 SE2d 222) (1999).

Here, the State proved that two masked bandits committed three armed robberies, that Dillard and Jackson attempted to use the credit and debit cards obtained in the robberies immediately after the robberies, that masks and a gun used in the robberies were found in Dillard's car, and that Dillard told her half-sister that she and Jackson had committed the robberies. The evidence was sufficient to establish the fact of a conspiracy between Dillard and Jackson sufficient to admit declarations by Jackson. See *Robinson v. State*, 278 Ga. 31, 34-35 (3) (a) (597 SE2d 386) (2004).

6. Dillard claims ineffective assistance of counsel. See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). She first contends that her counsel should have objected to the police officer's hearsay testimony about Selma Woods's identification of Dillard from one of the photographs. But trial counsel testified that he chose not to object as a matter of trial strategy, and Dillard can show no possible harm because she admitted that she was in the photograph and another witness identified her, too.

Dillard also asserts that counsel should have more fully objected to the above-mentioned "double hearsay" testimony by Renita Bush. Because we found that the evidence was admissible, we find no error.

7. Dillard cannot argue that the trial court failed to charge on identification because no written request to charge was made. *Johnson v. State*, 237 Ga. 495 (2) (228 SE2d 879) (1976). See also *Weems v. State*, 268 Ga. 515, 517 (5) (491 SE2d 325) (1997). She also contends that the charge should have been given because identification was her sole defense. See *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991). But, even if identification is the sole defense, "[w]hen a trial court has charged the jury fully on the presumption of innocence, reasonable doubt, burden of proof, credibility of witnesses, and impeachment of witnesses, it is not error to fail to charge the jury, sua sponte, on identification." *Clay v. State*, 232 Ga. App. 656, 658 (2) (503 SE2d 560) (1998).

8. Dillard's claim that the trial court erred by failing to charge on accomplice testimony and corroboration is without merit. See OCGA § 24-4-8. The prosecution largely relied on other evidence, not accomplice testimony, to prove Dillard's guilt, and therefore the charge was not warranted. See *Wooten v. State*, 240 Ga. App. 725, 728 (3) (c) (524 SE2d 776) (1999).

*Judgment affirmed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 3, 2005 —
RECONSIDERATION DENIED MARCH 29, 2005 — 

*Kristopher Shepherd*, for appellant.
*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney*, for appellee.